No. 18,102.

FRANK O'BRIEN, AS EXECUTOR, ETC. *v.* LEE WALLACE, AS ADMINISTRATOR, ETC.

(324 P. [2d] 1028)

Decided March 31, 1958.   Rehearing denied May 19, 1958.

Mr. FOSTER CLINE, Mr. CARL CLINE, for plaintiff in error.

Messrs. DICKERSON, MORRISSEY & DWYER, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

MAY A. PAIGE, a resident of Park County, died on November 20, 1954.

On November 29, 1954, Frank O'Brien filed a petition in the County Court of Park County, seeking to probate a document bearing date October 29, 1953, purporting to be the will of May A. Paige. On March 11, 1955, Lee Wallace, the adopted son and sole heir at law

of May A. Paige, filed his amended caveat and objections to the probate of said will and alleged as reasons therefor the following: (1) The purported will is not executed in accordance with the requirements of the statutes of the state of Colorado; (2) the testatrix lacked testamentary capacity at the time the purported will was executed; (3) the purported will is not the free and voluntary act and will of May A. Paige, and that execution thereof was procured by undue influence exercised by Frank O'Brien; (4) that the said May A. Paige (then May A. Wallace) and her then husband at the time they legally adopted Lee Wallace, in order to obtain the consent of Harry Clark, father of said Lee Wallace, to said adoption, agreed with said Clark that she would support and maintain Lee Wallace and would permit him to inherit her estate; would not disinherit him, and that the purported will violated that agreement; (5) that in order to obtain the consent of Lee Wallace (then eighteen years of age) to his adoption, the said May A. Paige agreed with said Lee Wallace that she would permit him to inherit her estate and would not disinherit him; that the purported will violated this agreement; (6) that the pretended will is void in that it attempts to disinherit Lee Wallace, contrary to the express provisions of the decree of adoption.

Frank O'Brien filed his answer to the amended caveat and denied all of the allegations relating to lack of conformity to law, lack of testamentary capacity, undue influence, contractual obligation with the father of Lee Wallace, contractual obligation with Lee Wallace, and alleged provisions of the adoption decree.

The purported will was admitted to probate by the county court and an appeal taken to the district court, where the issues were tried to a jury, which failed to reach a verdict. A second trial resulted in a verdict to the effect that the purported will was not the Last Will and Testament of May E. Paige. Motion for a new trial, consisting of eighty-six folios and setting forth forty-

eight alleged errors, was filed, argued and denied, and judgment entered holding that said instrument is not the Last Will and Testament of May E. Paige. Frank O'Brien, proponent and plaintiff in error, seeks reversal.

We shall refer to plaintiff in error as O'Brien, to defendant in error as Wallace, and to the decedent as Paige. The purported will gave to Wallace the sum of $100.00; everything else was given to O'Brien, who was the son of the daughter of Paige's sister, being a grand-nephew of Paige.

The trial consumed five days. The record consists of over 2300 folios and more than fifty exhibits, many of which are made up of twenty to fifty separate parts.

The judgment must be reversed for many reasons. Reasons 4, 5 and 6, as set forth in the caveat, are not grounds for denying probate. They relate to contractual rights and duties which if valid and binding could not be abrogated or varied by making of a will or other ex parte action of Paige. Such matters are foreign to the issues properly involved in a contest by caveat to be tried to a jury. The contractual rights asserted by Wallace in his caveat had no place in the proceedings before the county court. Such rights may only be asserted and determined in proper proceedings before a proper tribunal. 57 Am. Jur., 178, §203; *Oles v. Wilson, Executor, et al.,* 57 Colo. 246, 141 Pac. 489; *Hoff v. Armbruster, et al.,* 122 Colo. 563, 226 P. (2d) 312; *Hoff v. Armbruster,* 125 Colo. 324, 244 P. (2d) 1069.

These matters, although wholly outside the issues involved in a will contest, were repeatedly presented to the jury through pleadings, opening statements, offers of proof, and arguments, thus seeking to convey to the jury the impression that Paige was an ingrate who sought to avoid her binding contract by making a will which it is pled:

" * * * Violated this agreement, and is void and should be denied probate."

After all the testimony was in and the parties

had rested, O'Brien moved the court to strike from consideration of the jury the claim that the will was procured by undue influence. This motion was denied and over objection of O'Brien the court gave seven instructions concerning undue influence. The record is devoid of any evidence to support a claim of undue influence, and it was error to deny the motion to strike and to instruct the jury with reference to undue influence.

■ Wallace called as a witness John A. Rundgren, District Ranger for the United States Forest Service, who was permitted to testify at length over objections of O'Brien's counsel. None of his testimony bears even remotely on any issue before the court or jury. Counsel for Wallace prevailed upon the court to reserve its ruling on the objection that this evidence was immaterial on a promise that it would be connected up with other evidence which would disclose its materiality. As is often the case in such situations, the connecting evidence never was presented and the objections never ruled upon. The end result being that this immaterial evidence was left before the jury for its consideration.

During O'Brien's proof seeking to prove the will and during presentation of Wallace's evidence in opposition thereto, an expert witness in the field of psychiatry was in the court room and heard the testimony of four witnesses for O'Brien and nine witnesses for Wallace. Also the testimony of O'Brien, who was called as an adverse witness for cross-examination. This expert was then called to the witness stand by Wallace and, after proof of his qualifications, the following questions were propounded and answers given:

"Q. Now, Doctor, in this case have you heard *all of the testimony* of the witnesses *concerning the mental condition of May A. Paige on the 29th day of October, 1953?*

"MR. CARL CLINE: For the reasons heretofore assigned, we object.

"MR. DICKERSON: We settled those reasons.

"MR. CARL CLINE: It has been settled.

"THE COURT:    That would be the sum of your questioning of this witness?

"MR. DICKERSON:    Yes, your Honor, under the stipulation of counsel about the proper questions to propound.

"THE COURT:    Objection overruled. He may answer.

"Q. You have formed an opinion? A. I have an opinion. Q. And what is that opinion, based on the evidence? A. *In my opinion, based on the evidence which I have heard in the court room,* on the date in question May Paige was insane. Q. On the 29th day of October — A. 29th day of October, 1953. MR. DICKERSON: You may inquire.

### "CROSS EXAMINATION

"BY MR. CARL CLINE:

"Q. Did I understand you to say, Doctor, that *you formed your opinion from just what you heard here in the court room?* A. Yes. That is all." (All emphasis supplied.)

From the above, it would seem that there may have been some stipulation of counsel as to the proper question to propound. The record does not disclose any such stipulation. Stipulation or not, objection was made to the question. The question was improper and the answer without probative value. The oracular pronouncement of insanity should not have been accepted in evidence, and admission thereof was error.

The usual method of presenting an expert opinion is by propounding a hypothetical question, assuming certain facts in evidence to be true. The method attempted to be pursued in this case also finds sanction in the law, but counsel have overlooked several essential requirements. The method pursued can be used only where the testimony is brief, simple, and presents no substantial conflict. In this case the testimony of O'Brien's witness is in direct conflict with the testimony of Wallace's witnesses. Moreover, the opinion of the expert may have been predicated on the testimony of

the witness John A. Rundgren, which we have held is immaterial and inadmissible. In expressing an expert opinion on conflicting testimony, the expert must necessarily accept part of it as true and reject all to the contrary, thus invading the province of the jury. In permitting the expression of such opinion, the court was in error.

Counsel for Wallace rely on *Callahan v. Feldman,* 90 Colo. 540, 11 P. (2d) 217, and state that the question presented in that case was:

"May an expert be permitted, against objection, to give in evidence his opinion as to the sanity or insanity of the testator based upon *conflicting evidence,* the expert having been present during the entire trial and observed the witnesses on the stand and heard all the evidence produced by both parties? (Emphasis supplied.)

This is followed by counsels' statement: "The Supreme Court answered the question in the affirmative * * *."

We find nothing in the opinion to warrant counsels' conclusion. The court did not answer that question, but based its decision on other grounds, as evidence by the following: "* * * we are in accord with the statement of the judge who presided at the trial *that there is no conflict at all as to the material facts* between the testimony elicited from the witnesses for the contestant, and the facts brought out by the witnesses for the proponent. * * *." (Emphasis supplied.)

* * *

"No objection was made to these questions which the witness answered. The questions propounded were apparently satisfactory both to the court and also to counsel for the contestant, as no objection was made by him as to the form of the questions, or to the answers that were given. It thus clearly appears that the admission of Dr. Work's testimony as to the sanity of Callahan, was not objected to at the time, and the form of the question

propounded was framed to meet the views of protestant's counsel. * * *."

■ Even if there were no conflict in the testimony, still there is missing from the question a very necessary element, and that is, to require the witness *"to assume that the evidence is true."* Naturally where there is a conflict in the evidence, it cannot all be true and in such case this element cannot be included in the question. It was not included in the question propounded to Wallace's expert. An opinion based on false testimony or on a hypothetical question based on a false assumption is valueless.

■ One seeking to have an expert express an opinion based on evidence which he has heard must be sure: (1) that there is no material conflict in the testimony; (2) the witness must assume the testimony to be true; (3) must be sure that the testimony has been properly admitted and is not inadmissible as immaterial, hearsay or for other reasons, and (4) the expert's opinion must not be predicated in whole or in part on opinions of others, expert or lay.

The expert testimony introduced in this case violates all of these requirements.

The question of permitting an expert to express an opinion based on testimony overheard by the witness is dealt with at length in 20 Am. Jur. 662, §789, and from which we quote:

"The courts are not in accord upon the question of the right of an expert witness having no personal knowledge of the facts to give an opinion based upon the testimony of other witnesses which the expert witness has heard given. It is undoubtedly the better practice in such cases to incorporate in a hypothetical question the facts on which an expert witness is asked to give an opinion. Many statements are to be found which suggest that as a broad general rule, an expert cannot be allowed to base his opinion on the evidence which he has heard given in the case. According to the weight of

authority, however, it is within the discretion of the trial court to permit an expert witness to give an opinion *based upon the assumption of the truth of testimony which he has heard* given by other witnesses without a hypothetical statement of the facts, where the witnesses are few and the testimony is not voluminous, complicated, or conflicting. In such cases, the question should be so framed that the jury will understand the exact facts upon which the witness bases his opinion. This rule is especially applicable where the issue is insanity or some other matter of medical knowledge. It has been said that where testimony is brief and simple, and especially where there is no contradictory evidence, to ask the expert to state his opinion, assuming the evidence given to be true, is equivalent to embodying the evidence in a hypothetical question. (Emphasis supplied.)

\* \* \*

"It is necessary also that the witness give his opinion upon the assumption of the truth of the evidence upon which his opinion is based."

"All courts agree that if there is any conflict between the witnesses as to facts on which an expert opinion is sought, the expert witness cannot, although he has heard the testimony, be asked to base his opinion on that testimony, because, to reach his conclusion, he must necessarily invade the province of the jury and pass on the credibility of witnesses and the weight of the evidence. In cases of conflict in the testimony heard by experts, a hypothetical statement of facts upon which their opinion is sought is required. \* \* \*." — §790.

"The opinion of an expert witness when not based upon facts in his own knowledge or upon his own personal observation should be based upon facts testified to at the trial which, for the purposes of the expert's testimony, are assumed to be true. It is generally agreed that the opinion of an expert, however qualified to speak, cannot be predicated either in whole or in part

upon the opinions, inferences, and conclusions of others, whether expert or lay witnesses, * * *." — §791.

██ The record in this case is replete with matters not properly before a jury. Repeated efforts were made to prove facts that were clearly irrelevant and improper. Efforts were made again and again to prove contractual obligations of Paige to Wallace and to prove Paige indebted to Wallace and his wife. None of which had any bearing on the questions of testamentary capacity or undue influence, yet the bewildering effect thereof may have unduly influenced the jury. Counsel in the trial of a case, and particularly before a jury, should avoid personalities, asides, byplay, lengthy offers of inadmissible testimony, unequivocal statements of facts in argument to the jury on questions which the jury is to determine, and arguments to the court in the presence of the jury, designed to influence the jury rather than enlighten the court.

On retrial, all of these objectional matters and numerous others not mentioned should be carefully avoided in order that the parties may have a trial and a proper determination of their rights as contemplated by law.

The judgment is reversed and the causes remanded for retrial in conformity with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE DAY not participating.